United States District Court
for the
Southern District of Florida

| Douglas Weiss, Plaintiff, | ) | |
|---|---|---|
| | ) | |
| v. | ) | Civil Action No. 19-21552-Civ-Scola |
| | ) | |
| General Motors LLC, Defendant. | ) | |

**Order on Defendant's Motion to Dismiss**

This matter is before the Court on Defendant's motion to dismiss the Plaintiff's complaint. (ECF No. 11.) The Plaintiff has filed a response (ECF No. 24) and the Defendant timely replied. (ECF No. 28.) Upon review of the record, the parties' briefs, and the relevant legal authorities, the Court **grants in part and denies in part** the Defendant's motion. (**ECF No. 11**.)

**I.  Background**

Plaintiff Weiss purchased a new 2015 General Motors Chevrolet Silverado from Auto Nation Chevy in Coral Gables, Florida on September 10, 2015. (ECF No. 1 at ¶ 124.) According to the Plaintiff, GM vehicles are equipped with defective drivelines. (*Id.* at ¶ 2.) The defective drivelines cause the GM vehicles to shake violently when they reach certain interstate cruising speeds. (*Id.*) The defect is often referred to as the "Chevy Shake." (*Id.*) The cause of the defect is a defective drive shaft. (*Id.* at ¶¶ 2-3.) The drift shaft is an aluminum tube that runs the length of the interior, transmitting torque and rotation from the engine to the wheels. (*Id.* at ¶ 3.) When the output shaft of the transmission rotates, it spins the drive shaft, turning the differential ring gear to rotate the wheels. (*Id.*) Drivers have reported that the defect makes the vehicles feel unstable at high speeds and can cause a loss of control. (*Id.* at ¶ 4.) Over time, the defect can cause the part to deteriorate and eventually fail as the shaft drops to the ground and renders the vehicle undriveable. (*Id.*) The Plaintiff now brings this action on behalf of himself and a class of individuals who purchased or leased a 2015 or newer Cadillac Escalade, 2014 or newer Chevrolet Silverado, 2015 or newer Chevrolet Suburban, 2015 or newer Chevrolet Tahoe, 2014 or newer GMC Sierra, or 2015 or newer GMC Yukon/Yukon XL. (*Id.* at ¶ 136.) The Plaintiff asserts claims on behalf of a nationwide class and a Florida subclass. (*Id.*)

The Plaintiff alleges that GM was on notice of the Chevy Shake through its own knowledge about the material, design, and manufacture of the part, feedback from customers, complaints in the National Highway Transportation Safety Administration (NHTSA) database, online complaints in web forums, and

news reports. (*Id.* at ¶ 18.) The Plaintiff's complaint details a number of online consumer complaints. (*Id.* at ¶¶ 21-25.) When customers brought their vehicles to GM dealerships, GM would orally confirm the presence of the defect after a test drive but then later misrepresent the problem to avoid having to address it. (*Id.* at 21.) GM acknowledged the large volume of complaints and continued to provide vague representations without suggesting a concrete solution. (*Id.* at 22.)

NHTSA also reported over 100 complaints regarding the Chevy Shake. (*Id.* at ¶ 29.) The consumer complaints filed with NHTSA are delivered to GM and reviewed by GM's engineers. (*Id.*) The complaint also includes anecdotes of customers who have replaced the aluminum drive shaft themselves and successfully fixed the problem. (*Id.* at ¶ 109.) In GM's technical service bulletins, GM admitted that drive shafts could be a source of the problem and further admitted that there have been many cases of dented propeller shafts. (*Id.* at ¶ 111.) GM instructed its dealers to inspect the drive shaft, noted that any dents or damage to the drive shaft requires replacement, but then permitted only replacement of its defective aluminum drive shaft with the same defective drive shaft. (*Id.*) GM has issued half a decade of service bulletins regarding the Chevy Shake but systematically refused to disclose the known defect and honor its warranties to customers. (*Id.* at ¶¶ 113-115.)

GM's vehicles are sold with a 5-year/100,000 Powertrain Limited Warranty. (*Id.* at 114.) It is commonly understood that the drive shaft in sport utility vehicles and passenger trucks should have an expected useful life of at least 75,000 miles. (*Id.* at 115.) GM customers have spent substantial costs attempting to fix the Chevy Shake but GM has remained publicly silent regarding the defect. (*Id.* at 121.) Through his complaint, the Plaintiff seeks damages under the Magnuson-Moss Warranty Act (Count I), breach of express warranties (Count II), breach of implied warranties (Count III), and violation of Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (Count IV). Count I is brought on behalf of a nation-wide class and Counts II-IV are brought on behalf of the Florida subclass.

## II. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Where a cause of action sounds in fraud, Federal Rule of Civil Procedure 9(b) must be satisfied in addition to the more relaxed standard of Rule 8. Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake," although "conditions of a person's mind," such as malice, intent, and knowledge, may be alleged generally. Fed. R. Civ. P. 9(b). "The 'particularity' requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (citations omitted). "When a plaintiff does not specifically plead the minimum elements of their allegation, it enables them to learn the complaint's bare essentials through discovery and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, [grounded on] baseless allegations used to extract settlements." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 n.24 (11th Cir. 2002). Thus, the Rule's "particularity" requirement is not satisfied by "conclusory allegations that certain statements were fraudulent; it requires that a complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing & Waterproofing*, 287 F. App'x at 86. To meet this standard, the complaint needs to identify the precise statements, documents, or misrepresentations made; the time and place of, and the persons responsible for, the alleged statements; the content and manner in which the statements misled the plaintiff; and what the defendant gained through the alleged fraud. *Id.*

## III. Analysis

### A. Standing to Sue

In its motion to dismiss, GM argues that the Plaintiff lacks standing to sue on behalf of consumers who purchased vehicles other than the 2015 Chevrolet Silverado 1500 that he owns. (ECF No. 11 at 3.) In response, the Plaintiff argues that all class vehicles are the "same product" for purposes of putative class members because all class vehicles share the same architecture and parts, and in turn, the same defect. (ECF No. 24 at 2.) The Plaintiff also argues that the Defendant's standing argument is premature and should be decided at the class certification stage. (*Id.* at 3.)

"As standing is a threshold issue, addressing the issue of standing at the motion to dismiss phase of the litigation, rather than waiting for the class certification phase, is not premature." *Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344, 2015 U.S. Dist. LEXIS 181103, *8 (S.D. Fla. July 21, 2015) (Dimitrouleas, J.). The Eleventh Circuit requires that in a class action suit "at least one named class representative must establish Article III standing for each class subclaim." *Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Because Article III standing requires a plaintiff to establish that he has suffered an injury-in-fact, a class plaintiff "cannot raise claims relating to those other products which he did not purchase." *Toback v. GNC Holdings, Inc.* No. 13–80526–CIV, WL 5206103 at *5 (S.D. Fla. Sept. 13, 2013) (Cohn, J.) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

As noted by this Court and other courts in the Southern District of Florida, there is "some uncertainty or disagreement in the law on the issue" of whether a plaintiff can assert claims on behalf of class members that purchased different products based on a theory that the products are essentially the same. *See Sanchez-Knutson v. Ford Motor Co.*, 14-civ-61344, 2015 WL 11197772, at *4 (S.D. Fla. July 22, 2015) (Dimitrouleas, J.). In *Sanchez-Knutson,* the court dismissed class-action claims related to car models other than those car models that the named plaintiffs had purchased or leased. *Id.* at *4-*5. However, the court did not dismiss the plaintiff's claims on the *same model car from several model years*, despite the fact that the named plaintiff only purchased or leased the version of that car from a single model year. *Id.* The court provided no rationale for the distinction. *Id.*

In *Feldman v. BRP United States, Inc.,* the plaintiff purchased a 2015 Sea-Doo GTI 130 SI. No. 17-cv-61150, 2018 WL 8300534 (S.D. Fla. March 28, 2018) (Dimitrouleas, J.). He sought to represent a class of current and former owners of any 2010 to 2016 Sea-Doo personal watercraft. *Id.* at *2. The Plaintiff argued that he had standing because all class Sea-Doos had the same defective exhaust resonator. *Id.* The court, based on *Sanchez-Knutson,* held that the plaintiff could

not represent purchasers of models that he did not purchase and limited his claims to the 2010-2016 Sea-Doo GTI PWC—the model he purchased for various years. *Id.* at \*7.

In both *Sanchez-Knutson* and *Feldman,* the court rejected the plaintiff's argument that he could represent class members who purchased a different product. However, both opinions allowed the plaintiff's claims to go forward for class members who purchased different model *years*, for example the 2010 to 2016 Sea Doo, even though the plaintiff purchased a 2015 Sea Doo. Neither court explained why the plaintiff was allowed to go forward on these claims. In *Sanchez-Knutson,* the court relied primarily on cases rejecting a "sufficiently similar" standard. 2015 WL 11197772 at \*4. That is, the plaintiff does not have standing to assert claims based on models he did not purchase, even if they are sufficiently similar. But the court did not address cases in which the plaintiff alleges that the products are *the same.*

In *Heuer v. Nissan N. Am., Inc.,* this Court held that where the plaintiff alleged that the defect was "materially identical" from product to product, the plaintiff had standing, at the motion to dismiss stage, to pursue claims on behalf of class members who purchased different products. No. 17-60018, 2017 U.S. Dist. LEXIS 127816, at \*15 (S.D. Fla. Aug. 17, 2017) (Scola, J.). This Court held that the question of whether the plaintiff had standing turned on a fact-intensive inquiry regarding whether the different models were identical. *Id.* Construing all facts in favor of the plaintiff, the Court held that the plaintiff had standing to pursue his claims.

The Defendant tries to distinguish *Heuer* as an outlier and point out that the plaintiff in *Heuer* was only suing on behalf of consumers with different model *years,* rather than model years *and* model types. The Court does not see this distinction, which presumably comes from *Sanchez-Knutson* and *Feldman*, between products of the same model type but different years and different model types. Allegations that a 2015 Chevy Silverado and a 2014 Chevy Silverado have the same drive shaft are no more compelling than allegations that a 2015 Chevy Silverado and a 2014 Yukon have the same drive shaft. Here, the Plaintiff alleges that that the Chevy Shake defect exists in 2014 to 2019 Chevrolet Silverados, GMC Sierras, 2015 to present Chevrolet Tahoes, Chevrolet Suburbans, GMC Yokons, and Cadillac Escalades. (ECF No. 1 at ¶ 113.) Discovery will reveal whether GM used the same drive shaft in these vehicles over different model years and types. Accordingly, at this stage of the litigation, that is sufficient to confer standing on the Plaintiff as to his Florida sub-class.

With regard to the nationwide class, the Plaintiff's claims do not fare as well. The Plaintiff's Magnuson Moss Warranty Act claim, the only federal claim asserted here, depends on Florida law. *See Brown v. Electrolux Home Prods., Inc.*,

817 F.3d 1225, 1231 (11th Cir. 2016) ("[C]laims under the Magnuson-Moss Act are . . . based on state law.). The Plaintiff does not claim a legal injury in any state other than Florida, nor does he allege an injury that arises under the laws of any other state.

"It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Feldman*, 2018 WL 8300534 at *6 (citing *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000). "In accordance with this principle, named plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises." *Id.* (compiling cases). Therefore, the Plaintiff lacks standing to assert claims on behalf of class members who purchased GM vehicles outside of Florida.

### B. Count II – Breach of Express Warranties

The Defendant next argues that Count II for breach of the express warranty should be dismissed because (1) the GM warranty does not cover design defects, only materials and workmanship repairs and (2) the Plaintiff has not alleged that his vehicle was within the time and mileage limitations of the warranty when he brought it to the GM dealership. In response, the Plaintiff asserts that the plain language of the warranty covers design defects and Plaintiff is seeking relief based on the 5-year/100,000 mile warranty, not the 3-year/36,000 mile warranty so his vehicle was still covered when he presented it to GM on January 10, 2019. (ECF No. 24 at 15-17.)

The Court will address the second argument first. The Plaintiff's complaint clearly pleads its claim under the 5-year/100,000 Powertrain Limited Warranty (the "Powertrain Warranty"). (ECF No. 1 at ¶¶ 114, 123.) Although there are some allegations that GM also breached the "bumper-to-bumper" 36,000 mile warranty, *see id.* at ¶ 126, the Plaintiff does not defend this position and asserts that the claim is brought under the Powertrain Warranty. (ECF No. 24 at 15.) The Defendant, in its Reply, does not argue that the Plaintiff's claim falls outside the Powertrain Warranty based on time or mileage. (ECF No. 28 at 9.) Accordingly, the Court denies the Defendant's motion to dismiss Count II on this ground and interprets Count II as a breach of the Powertrain Warranty.

The Defendant argues that the language in the Powertrain Warranty only covers defects "related to materials or workmanship" and therefore does not cover design defects. (ECF No. 11 at 18.) According to GM, the Plaintiff alleges

only design defects and not defects in material and workmanship. The relevant language in the Powertrain Warranty is the following:

> The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship occurring during the warranty period.

(ECF No. 11-2 at 9.)

"Under Florida law, a written warranty is treated as a contract between buyer and seller." *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1318 (S.D. Fla. 2009) (Gold, J.) "[C]ontract interpretation begins with plain meaning of words used, and words are to be given their natural and ordinary meaning." *Hirsch v. Jupiter Golf Club LLC*, 232 F. Supp. 3d 1243, 1251 (S.D. Fla. 2017) (Mara, J.). Here, a plain reading of the Powertrain Warranty demonstrates that it covers "repairs to correct any vehicle defect" and *not* "slight noise, vibrations, or other normal characteristics of the vehicle related to materials or workmanship." GM's reading of this sentence would require the Court to insert another comma after "vehicle" so that the main clause would read "[t]he warranty covers repairs to correct any vehicle defect . . . related to materials or workmanship . . ." *See McKee v. General Motors, LLC*, 376 F. Supp. 3d 751, 757 (E.D. Mich. 2019) (applying Florida law, analyzing same warranty language, and rejecting GM's reading of the contract language). The Court will not adopt such a strained reading of the Powertrain Warranty's plain language. *See Southern-Owners Ins. Co. v. Hayden*, No. 08-14381, 2010 WL 11504289, at *1 (S.D. Fla. March 25, 2010) (Martinez, J.) ("Defendants' proposed interpretation of the contract requires a strained ready of the policy that defies its plain meaning[.]"). The Court thus denies GM's motion to dismiss the express warranty claim.

### C. Count III – Breach of Implied Warranties

The Defendant presents two arguments in support of its motion to dismiss Count III, breach of implied warranty. First, the Defendant argues that the Plaintiff lacks privity with GM because Plaintiff purchased the vehicle from a dealership. (ECF No. 11 at 5.) In response, the Plaintiff argues that Florida courts accept the premise that plaintiffs who purchase a vehicle from an authorized dealership are in privity with the manufacturer. (ECF No. 24. 3.) After careful review of the relevant caselaw, the Court agrees with the Plaintiff.

Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity. *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. 3d DCA 2005). Although a consumer who purchases a product from a dealer is in privity with the dealer, the consumer is not in privity with the manufacturer for purposes of enforcing an implied warranty of merchantability.

*See, e.g., Bailey v. Monaco Coach Corp.*, 168 F. App's 893, 894-95 (11th Cir. 2006). There is, however, an exception to this rule under third-party beneficiary law. "Florida law . . . recognizes that, in some situations, a person who is not a party to a contract can enforce the terms of the contract if the provisions of the contract primarily and directly benefit the third party or a class of persons of which the third party is a member." *Varner v. Dometic Corp.*, No. 16-22482, 2017 WL 3730618, at *12 (S.D. Fla. Feb. 7, 2017) (Scola, J.) (citations and quotations omitted). The Defendant argues that the Plaintiff's reliance on cases such as *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1233, 1234 (S.D. Fla. 2013) (Dimitrouleas, J.), which recognize this exception, is misplaced because the "overwhelming weight" of authority rejects the Plaintiff's argument that privity can be established under the third-party beneficiary exception. (ECF No. 28 at 2.)

Upon review of the Southern District's conflicting caselaw, the Court disagrees with the Defendant. The Defendant's argument relies on a line of cases citing *In re Takata Airbag Products Liability Litigation*, 193 F. Supp. 3d 1324 (S.D. Fla. 2016) (Moreno, J.). *See, e.g., Tershakovec v. Ford Motor Co.*, No. 17-21087, 2018 WL 3405245, at *10 (S.D. Fla. July 12, 2018) (Moreno, J.); *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019) (Moreno, J.); *Cardenas v. Toyota Motor Corp.*, No. 18-22798, 2019 WL 4777891, at *12 (S.D. Fla. Sept. 20, 2019) (Moreno, J.). The problem with this line of cases is that the plaintiffs in *Takata* did not respond to the defendant's privity argument. *See Takata*, 193 F. Supp. 3d at 1346. Therefore, the court did not consider or analyze a fully briefed and contested third-party beneficiary argument. *See id.* ("Mazda raised three reasons to dismiss the implied warranty claim . . . Plaintiffs did not respond to any of them. Mazda argues, inter alia, that Vukadinovic lacked privity with Mazda, and thus, cannot maintain a claim for breach of implied warranty. The Court agrees."). Therefore, the Court finds this line of cases unpersuasive.

The competing line of cases, which do not rely on *Takata*, hold that the plaintiff can establish privity as a third-party beneficiary. *See, e.g., Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1233, 1234 (S.D. Fla. 2013) (Dimitrouleas, J.); *Ohio State Troopers Ass'n v. Point Blank Enters.*, No. 17-62051, 2018 U.S. Dist. LEXIS 59141 (S.D. Fla. April 5, 2018) (Ungaro, J.); *Feldman*, 2018 WL 8300534 at *8; *Varner*, 2017 WL 3730618 at *12. Under this line of cases, the Plaintiff can establish privity with GM if he alleges that he purchased a vehicle from an authorized dealer who was an agent of GM, he was the intended consumer of the vehicle, the dealership was not the intended consumer, and the warranty was intended to benefit the consumer, not the dealership. *Sanchez-Knutson*, 52 F. Supp. 3d at 1234; *Feldman*, 2018 WL

8300534 at *8 ("Additionally a plaintiff can pursue a claim of breach of implied warranty through third-party beneficiary law.").

The Court finds more persuasive the decisions finding the third-party beneficiary exception viable in Florida, including this Court's dicta in *Varner*. *See Varner*, 2017 WL 3730618 ("Florida law, however, recognizes that, in some situations, a person who is not a party to a contract can enforce the terms of the contract if the provisions of the contract primary and directly benefit the third party[.]"). Otherwise, a manufacturer would always be able to shield itself from implied warranty claims even though it knows that its intended consumer is not the dealership. Here, the Plaintiff's complaint alleges that GM does business in Florida through its authorized dealerships, ECF No. 1 at ¶ 12, and Plaintiff purchased a vehicle from one of these dealerships. (*Id.* at ¶ 124.) GM's warranties are intended for consumers of GM vehicles. (*Id.* at ¶ 147-150.) Viewing the facts in the light most favorable to the Plaintiff at this stage of the proceedings, the Court finds that the Plaintiff has stated a claim under the third-party beneficiary exception.

Second, the Defendant argues that the Plaintiff has failed to allege that the vehicle is unmerchantable because Plaintiff continued to drive the vehicle. (ECF 11 at 7.) Under Florida law, "[t]o be merchantable," goods must "[be] fit for the ordinary purposes for which such goods are used." Fla. Stat. § 672.316(2)(c). Cars are fit for the ordinary purpose of transportation. *See Tershakovec v. Ford Motor Co.*, 2018 WL 3405245 at *9; *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1287 (N.D. Ga. 2018).

The Plaintiff alleges that his Chevy Silverado begins to shake when it reaches 70 mph and aggressively shakes from left to right when it reaches 75 mph. (ECF No. 1 at ¶ 127.) The Plaintiff also alleges that this is a "major safety concern" because the vehicle feels unstable and can cause a loss of control. (*Id.* at ¶ 4.) If left unaddressed, the drive shaft defect can cause the part to deteriorate, "culminating in failure as the shaft drops to the ground and renders the vehicle undriveable." (*Id.*) Based on these allegations, the Court finds that the Plaintiff has alleged facts that, if proven, would show that the Chevy Shake affects the drivability and safety of the car. At this stage of the proceedings, that is all that is required. *See Amin*, 301 F. Supp. 3d at 1288 ("The defect . . . may impact the safety, drivability, and usefulness of the Class Vehicles or they may not. That question will depend on the facts developed through discovery in the case and is thus not appropriate for resolution on a motion to dismiss."). Accordingly, the Court denies the Defendant's motion to dismiss Count III.

### D. Count I – Magnuson-Moss Warranty Act Claims

"[A] Magnuson–Moss Warranty Act claim only exists if a valid breach of warranty claim is also stated." *Melton v. Cent. Arms, Inc.*, 243 F. Supp. 3d 1290, 1304 (S.D. Fla. 2017) (Moreno, J.) (citing *Bailey v. Monaco Coach Corp.*, 168 Fed. App'x 893, 894 n.1 (11th Cir. 2006)). Because the Court declined to dismiss Counts II and III, the Plaintiff's Magnuson-Moss Warranty act claim (Count I) survives with respect to the Florida class only.

### E. Count IV - Florida Deceptive and Unfair Trade Practices Act (FDUTPA)

The Defendant moves to dismiss the Plaintiff's FDUTPA claim on two grounds: (1) the Plaintiff's FDUTPA claim does not meet Rule 9(b)'s heightened pleading requirements and (2) the Plaintiff did not allege that the Defendant knew of the defect at the time he purchased the vehicle. (ECF No. 11 at 20-21.) In response, the Plaintiff argues that Rule 9(b) does not apply to FDUTPA claims and he has sufficiently alleged that the Defendant had knowledge of the defect through consumer complaints and service bulletins. (ECF No. 24 at 22-23.) Upon careful review of the relevant authority, the Court agrees with the Plaintiff.

When a party raises claims of fraud or mistake, it must allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) serves three main goals: "to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from 'improvident charges of wrongdoing,' and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). Thus, while Rule 9(b) contemplates notice and response concerns similar to Rule 8(a), it also protects a defendant's interest in his own reputation and goodwill. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) ("This higher standard stems from the obvious concerns that general, unsubstantiated charges of fraud can do damage to a defendant's reputation.").

The Defendant argues that Plaintiff's FDUTPA claim must meet the heightened pleading standard of Rule 9(b). However, there is a split of authority within the Southern District as to whether Rule 9(b) applies to FDUTPA claims. One line of cases holds that Rule 9(b) applies to the extent the FDUTPA claim at issue sounds in fraud. *See, e.g., Llado-Carreno v. Guidant Corp.*, 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb 22, 2011) (Altonaga, J.); *Perret v. Wyndham Vacation Resorts, Inc.*, 846 F. Supp. 2d 1327, 1333 (S.D. Fla. 2012) (Seitz, J.); *Begualg Inv. Management Inc. v. Four Seasons Hotel Ltd.*, No. 10-22153, 2011 WL 4434891 (S.D. Fla. Sep. 23, 2011) (Martinez, J.). Another line of cases holds that the requirements of Rule 9(b) do not apply to claims under FDUTPA. *See,*

*e.g., FTC v. Student Aid Center, Inc.*, 281 F. Supp. 3d 1324, 1334 (S.D. Fla. 2016) (Moreno, J.); *Toback v. GNC Holdings, Inc.,* 13-cv-80526, 2013 WL 5206103, at *2 (S.D. Fla. Sept. 13, 2013) (Cohn, J.); *Harris v. Nordyne, LLC*, 14-cv-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 13, 2014) (Bloom, J.).

The goal of Florida's Deceptive and Unfair Trade Practices Act is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2) (2013). As the Eleventh Circuit has held, "the proscription against unfair and deceptive acts and practices sweeps far more broadly than the doctrine of fraud or negligent misrepresentation, which asks only whether a representation was technically accurate in all material respects." *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 992 (11th Cir. 2010). "FDUTPA's elements are more particularized than those of common law fraud." *Harris*, 2014 WL 12516076 at *5. Therefore, Rule 9(b)'s concerns with subjecting defendants to unfounded allegations of fraud is lessened by the specificity required under FDUTPA. Because "FDUTPA claims seek a remedy for conduct distinct from traditional common law torts such as fraud[,]" the Court finds that "the uniqueness of the cause of action place[s] it outside the ambit of Rule 9(b)." *Harris*, 2014 WL 12516076 at *4. Accordingly, this Court joins the decisions holding that the requirements of Rule 9(b) do not apply to a claim under FDUTPA.

The Defendant also argues that the Plaintiff's FDUTPA claim must fail because Plaintiff did not allege that GM knew of the alleged defect at the time the Plaintiff purchased his vehicle. The Court finds that the Plaintiff's allegations sufficiently allege GM's knowledge. The Plaintiff alleges that "GM knew from the time of manufacture that the drive shafts contained a dangerous, inherent defect from the point of manufacture that caused the Class Vehicles to exhibit the Chevy Shake." (ECF No. 1 at ¶ 17.) GM's knowledge prior to the Plaintiff's purchase in 2015 came from complaints to the National Highway Transportation Safety Administration in 2014 and online complaints in web forums and social media as early as 2013. (*Id.* at ¶ 118.) GM also published a service bulletin in 2014 acknowledging that "[s]ome customers may comment about a vibration at speeds of 56-72 km/h (35-45 mph) or 96-120 km/h (60-70mph), which can be felt in either the seat or steering wheel." (*Id.* at 112; ECF No. 1-3.) Construing these allegations in the light most favorable to the Plaintiff, the Court finds that the Plaintiff has sufficiently alleged GM's knowledge of the defect. *See Horton v. Hoosier Racing Tire Corp.*, 15-cv1453, 2015 WL 12859316, at *3 (M.D. Fla. Dec. 15, 2015). Accordingly the Defendant's motion to dismiss Count IV is denied.

Count IV also seeks injunctive and declaratory relief. (ECF No. 1 at ¶ 179.) The Defendant moves to strike these allegations because the Plaintiff does not

have standing to pursue a Rule 23(b)(2) class where there is no threat of future injury and all of Plaintiff's claims are redressable by a damages award. "Defendants are confusing the requirements for injunctive or declaratory relief under federal statutes with the quite different requirements under the FDUTPA." *Galstaldi v. Sunset Communities USA, LLC*, 637 F. Supp. 2d 1045, 1057 (S.D. Fla. 2009). The FDUTPA statute states as follows:

> Without regard to any other remedy or relief to which a person is entitled, anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

Fla. Stat. § 501.211(1). A plain reading of the statute indicates that the Plaintiff is entitled to declaratory and injunctive relief "without regard to any other remedy or relief to which a person is entitled." *Id.* "There is no requirement that a plaintiff show an ongoing practice or irreparable harm, and declaratory relief is available regardless of whether an adequate remedy at law also exists." *Galstaldi*, 637 F. Supp. 2d at 1057. Thus, the Court denies the Defendant's motion to strike the Plaintiff's request for injunctive and declaratory relief.

## IV. Conclusion

Based on the foregoing, the Court **grants in part and denies in part** the Defendant's motion. (**ECF No. 11**.) The Defendant's claims as to the nationwide class are dismissed. Accordingly, Count I will remain as to the Florida sub-class only. The Defendant's motion as to Counts II, III, and IV is **denied**. The Defendant's motion to stay discovery (**ECF No. 27**) is **denied as moot**.

**Done and ordered** at Miami, Florida, on October 22, 2019.

_____
Robert N. Scola, Jr.
United States District Judge